UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL SCOTT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALEB CARR, *et al.*,<br><br>　　　　Defendants. | CASE NO. C20-236RSM<br><br>ORDER DENYING MOTION TO TRANSFER VENUE |

## I.　INTRODUCTION

This matter comes before the Court on Defendants Caleb Carr and Vita Inclinata Technologies, Inc. ("Vita")'s Motion to Transfer Venue, Dkt. #25. Plaintiff Paul Scott opposes Defendants' Motion. Dkt. #28. The Court finds oral argument unnecessary to resolve the underlying issues. Having reviewed Defendants' Motion, Plaintiff's Response, and the remainder of the record, the Court DENIES Defendants' Motion to Transfer Venue for the reasons set forth below.

//

ORDER DENYING MOTION TO TRANSFER VENUE - 1

## II.     BACKGROUND

In 2018, Defendant Carr was in the early stages of developing technology company Vita Inclinata Technologies, LLC ("Vita LLC") and sought assistance in early stage business development. Dkt. #19 at ¶¶ 3.1-3.4. Parties' mutual connections at Seattle University introduced Mr. Carr to Plaintiff, who is experienced in business development and advising new venture companies. In exchange for Plaintiff's consulting and assistance with early business development of Vita LLC, Defendant Carr offered Plaintiff a 1% ownership interest in the company. Parties executed an agreement on November 9, 2018 ("the Agreement") in which Mr. Carr pledged 1% equity in Vita LLC to Plaintiff in consideration for past and ongoing consulting services. *Id.* at ¶¶ 3.8-3.10. After execution of the agreement, Vita LLC was converted into Vita Inclinata Technologies, Inc. ("Vita"), a Delaware corporation. *Id.* at ¶ 3.11.

Plaintiff alleges that starting in October 2019, Defendant Carr began making efforts to modify the parties' Agreement, including proposing changes that would replace the commitment to transfer ownership with a vesting structure contingent on Plaintiff's continued involvement with Vita. *Id.* at ¶¶ 3.12-3.13. Plaintiff claims he rejected these proposed changes and requested transfer of the agreed-upon shares in Vita. Defendant Carr allegedly responded by inviting Plaintiff to participate as Managing Director of AeroInnovate, an affiliated non-profit of Vita, and proposed a Master Service Agreement that purported to supersede prior agreements between the parties. *Id.* at ¶¶ 3.13-3.14. Plaintiff rejected this offer.

On January 16, 2020, Plaintiff initiated this action against Defendants in Washington State Superior Court, claiming breach of contract and seeking equitable relief for Defendants' alleged failure to transfer the 1% interest as provided by the terms of the Agreement. Dkt. #1. Defendants timely removed the case to this Court on February 14, 2020 based on diversity

ORDER DENYING MOTION TO TRANSFER VENUE - 2

jurisdiction, 28 U.S.C. § 1332. *Id.* On April 6, 2020, Defendants moved to transfer this case to the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1404. Dkt. #25.

### III.   DISCUSSION

**A.  Legal Standard**

Under 28 U.S.C. § 1404, this Court has discretion to transfer this case in the interests of convenience and justice to another district in which venue would be proper. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Specifically, Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 12-CV-05502-BHS, 2013 WL 364814, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In the Ninth Circuit, district courts typically apply a nine-factor balancing test to determine whether to transfer a case under § 1404(a), examining: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process

ORDER DENYING MOTION TO TRANSFER VENUE - 3

to compel attendance of unwilling non-party witnesses, [] (8) the ease of access to sources of proof, and (9) the public policy considerations of the forum state." *Jones*, 211 F.3d at 498–99.[1]

As an initial matter, Plaintiff does not dispute that the action could have been brought in the District of Colorado. *See* Dkt. #25 at 6-7. The Court agrees. The District of Colorado has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000 and Plaintiffs and Defendants are citizens of different states. Dkt. #19 at ¶ 2.1. The District of Colorado also has personal jurisdiction over Defendants, who both reside in the state. *Id.* at ¶¶ 1.2-1.3 (Mr. Carr is a resident of Colorado and Vita maintains its principal place of business in Broomfield, Colorado). Venue is likewise proper in the District of Colorado given that all defendants reside in the state. 28 U.S.C. § 1391(b)(1).

However, parties disagree as to whether transfer to the District of Colorado would be convenient to the parties and witnesses and would further the interests of justice. For the reasons set forth below, the Court finds that the nine *Jones* factors weigh against transfer.

1. <u>Location where the relevant agreements were negotiated and executed</u>

There is no dispute that the November 11, 2018 Agreement setting forth Plaintiff's alleged 1% equity interest in Vita was negotiated and executed in Washington. *See* Dkt. #30 at 5-6. Defendants claim that two subsequent "agreements" were negotiated after June 2019, at which point Defendant Carr's business and communication was conducted from Colorado. This includes the Master Service Agreement, which offered Plaintiff the opportunity to participate as Managing Director of AeroInnovate. However, these subsequent negotiations by parties never

---

[1] Defendants have applied the eight-factor test from *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th Cir.1986), instead of the more recent *Jones* test. *See* Dkt. #25. Because courts in the Ninth Circuit typically the *Jones* test, which addresses nearly the same factors as *Decker Coal*, the Court will apply the nine-factor *Jones* test here.

ORDER DENYING MOTION TO TRANSFER VENUE - 4

resulted in a new executed agreement. As a result, the only relevant agreement negotiated *and* executed, which forms the basis of this lawsuit, is the November 11, 2018 Agreement. Accordingly, this factor weighs against transfer.

2. State most familiar with the governing law

Assuming that the Agreement's choice of law provision is valid, Plaintiff concedes that Colorado law governs interpretation of the contract. Dkt. #28 at 10; *see also* Dkt. #13-1, Ex. A, ¶ (c). While Plaintiff offers comparisons between Colorado and Washington contract law to demonstrate that both states apply "the same common law contract principles," the Court cannot conclude that every principle of contract law is the same between both states. For that reason, a Colorado court would be more familiar with the applicable law.

However, Plaintiff's complaint also raises quasi-contract claims such as unjust enrichment, quantum meruit, and promissory estoppel, which Plaintiff claims would apply Washington law. Dkt. #19 at ¶¶ 6.1-8.6; *see also Van Dusen*, 376 U.S. at 639 ("[I]n cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). Defendants' Reply does not meaningfully address this argument. *See* Dkt. #30 at 7. The Court agrees that a Washington court would be more familiar with the quasi-contract claims if applying Washington law. For this reason, the Court finds this factor neutral.

3. Plaintiff's choice of forum

Parties agree that this factor favors Washington. Courts afford a plaintiff's choice of forum significant deference. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Defendants argue that this factor should be given less

ORDER DENYING MOTION TO TRANSFER VENUE - 5

weight since they brought this motion under Section 1404(a) instead of as a *forum non conveniens* motion. Dkt. #25 at 9-10. However, because Plaintiff resides in his choice of forum, this factor still weighs heavily in the Court's analysis. "This factor is generally given significant weight when the plaintiff resides in the chosen forum." *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *4 (W.D. Wash. Apr. 14, 2016) (quoting *Nordquist v. Blackham*, No. C06-5433FDB, 2006 WL 259731, at *3 (W.D. Wash. Sept. 11, 2006)).

4. Respective parties' contacts with the forum

Plaintiff Scott is a resident of Washington and conducts his business from Washington. As a result, he has minimum contact with Colorado. Defendant Carr, in turn, is a resident of Colorado and Defendant Vita is headquartered in Colorado. However, Defendant Vita has an active excise tax account registered with Washington's Department of Revenue, a reported location in Redmond, and at least two employees that live and work in Washington State. Dkt. #22 at ¶¶ 3-4. Comparatively, Defendant Carr has more regular contact with Washington than Plaintiff Scott has with Colorado. While Plaintiff made one trip to Colorado in September 2019, Defendant Carr makes quarterly trips to Washington to meet with investors. Dkt. #13 at ¶¶ 5-6. For these reasons, this factor weighs slightly against transfer.

5. The contacts relating to the plaintiff's cause of action in the chosen forum

This factor concerns the contacts between Plaintiff's claims against Defendants and the chosen forum. *Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *5 (W.D. Wash. Oct. 25, 2019); *Jones*, 211 F.3d at 498. Three witnesses reside in Colorado—Mr. Sikora and Ms. Owen, who resided in Colorado prior to the lawsuit, and Mr. Watkins, who moved to Colorado from Washington in May 2020. *See* Dkt. #26 at ¶ 4. Mr. Sikora was a co-founder of Vita LLC and Defendant Carr's partner at the time Plaintiff and Defendant Carr met. Dkt. #21 at

ORDER DENYING MOTION TO TRANSFER VENUE - 6

¶ 2. Ms. Owen joined the Vita team during the Seattle University Business Plan Competition, and her position evolved from marketing to Chief Operations Officer of the company. *Id.* at ¶ 5. Plaintiff allegedly provided her with regular strategic, operational and personal business growth advice. Mr. Watkins, a long-time colleague of Plaintiff, joined the Vita team as a result of his relationship with Plaintiff and met regularly with Plaintiff in Washington to discuss Vita's business and sales. *Id.* Both Ms. Owen and Mr. Watkins resided in Washington at the time they joined Vita.

In addition to these three Colorado-based witnesses, Plaintiff claims that he consulted with a number of advisors, investors and potential investors based in Washington. *Id.* at ¶ 6. These contacts include Ross Miller of Morgan Stanley (regarding valuation of Vita), Andy Reinland (regarding Vita's financial position and personal issues with Mr. Carr), Adam Philipp (regarding Patent Allowance and company strategy), and Brianna McDonald (regarding Defendant Carr's investor strategy and issues regarding the real valuation of Vita during Fall 2019). Defendants have provided declarations from Mr. Reinland, Mr. Philipp, and Mr. Miller, who claim that they had either minimal or no substantive discussions with Mr. Scott relating to the conversations he claims occurred. *See* Dkt. #31 at ¶ 5-6; Dkt. #32 at ¶¶ 3-4; Dkt. #33 at ¶ 3. These three individuals likewise state they would not be inconvenienced if required to travel to Colorado. Plaintiff also identifies Robert Winters, based in San Francisco, with whom he discussed his discontent with Defendant Carr and the valuation of Vita. Dkt. #21 at ¶ 6.

Based on the current record, it is not apparent which witnesses are most significant to Plaintiff's breach of contract claim, nor to what extent Defendants' claim that the Washington-based individuals are "sham witnesses" is accurate. *See* Dkt. #30 at 4.  The fact that three of the four Washington-based witnesses appear to dispute Plaintiff's account does not

ORDER DENYING MOTION TO TRANSFER VENUE - 7

undermine their importance or relevance to Plaintiff's breach of contract claim. On the contrary, their disputed accounts suggest they may be relevant to addressing Plaintiff's claim that he "consulted on a number of facets integral for a start-up . . . ." Dkt. #19 at ¶ 3.11.

In sum, it appears that slightly more witnesses reside in Washington compared to Colorado. However, the most significant case-related events took place across both Washington and Colorado, but after the point that Vita moved its headquarters in Colorado. Given these countervailing factors, the Court considers this factor neutral.

6. Differences in the costs of litigation in the two forums

When considering the difference in cost, courts avoid transferring venue when such action "would merely shift rather than eliminate" costs and inconvenience. *Hong*, 2019 WL 5536406, at *6 (quoting *Decker Coal Co.*, 805 F.2d at 843) (internal quotations omitted). The analysis under this factor often focuses on the forum's relative proximity to witnesses. *See, e.g.*, *id.*; *Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*, No. C16-0362JLR, 2016 WL 3255003, at *6 (W.D. Wash. June 13, 2016) (concluding this factor favored transfer to Michigan since the majority of key witnesses lived closer in proximity to Michigan than Washington). "Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013). In addition to the relative number of witnesses located near the chosen forum, courts also consider the parties' relative capacity to absorb litigation costs. *See Pedigo Prod., Inc.*, 2013 WL 364814, at *3 ("The disruption of business affairs due to the time and cost of distant litigation is far more severe and detrimental to a small company than it is to a much larger corporation.") (internal quotations and citation omitted).

ORDER DENYING MOTION TO TRANSFER VENUE - 8

Here, it appears that slightly more witnesses are located in Washington compared to Colorado. However, Defendants claim that keeping the case in Washington will disrupt witness' laboratory research into "life-sav[ing] technology for the U.S. Department of Defense" and may threaten the financial health of Vita. Aside from Defendants' claim that Vita is "still a start-up enterprise with no revenue, operating primarily with grant funding for research and development into its potentially life-saving technology," Dkt. #25 at 4, the Court has minimal information on Vita's size and financial capacity to absorb litigation costs, making it difficult to determine the impact of this litigation on its business affairs. For the most part, it appears that transferring venue "would merely shift rather than eliminate" costs and inconvenience, but the Court will consider this factor in favor of transfer due to the potential disruption to Vita's business affairs.

7. <u>Availability of compulsory process to compel attendance of unwilling non-party witnesses</u>

Parties agree that this factor is neutral relative to both Colorado and Washington, as parties have not identified any non-party witnesses that may require compulsory process to compel attendance.

8. <u>Ease of access to sources of proof</u>

This factor considers location of witnesses, documentary evidence, and inventory to be inspected, if any. *See Jones*, 211 F.3d at 499; *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *12 (W.D. Wash. Oct. 20, 2017). However, "the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence." *Organo Gold Int'l, Inc. v. Aussie Rules Marine Services, Ltd.*, No. C18-0108JLR, 2018 WL 2359132, at *6 (internal quotations and citation omitted).

ORDER DENYING MOTION TO TRANSFER VENUE - 9

Plaintiff keeps his records in Washington while Defendants keep their records, including Vita's corporate records, in Colorado. Parties have not identified any relevant documents likely to present issues with respect to ease of access in light of the ability of electronic transfer. *See generally* Dkts. #25, 28. Further, as discussed above, witnesses may be required to travel to testify in either forum. However, because there are slightly more witnesses in Washington, the Court finds that this factor weighs slightly against transfer.

9. Public policy considerations of the forum state

Lastly, public policy factors the Court must consider include "the administrative difficulties flowing from court congestion" as well as the state's "interest in having localized controversies decided at home." *Atl. Marine Constr. Co., Inc.*, v. *U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 68 n.6 (2013). "Additionally, states have an interest in providing a forum for their injured residents." *Organo Gold Int'l, Inc.*, 2018 WL 2359132, at *6 (internal quotations and citation omitted).

Parties agree that administrative difficulties would be similar in either state, given that the District of Colorado and the Western District of Washington are experiencing similar levels of congestion. However, the Court agrees with Plaintiff that the public interest in adjudicating local controversies favors Washington. *See id.* Although parties in this case are now located in both Washington and Colorado, Plaintiff is a Washington citizen who entered into a contract with Defendant who was, at the time, a Washington resident and operating a business registered with the Washington Secretary of State. For these reasons, the Court finds that this case is a local controversy, therefore weighing strongly against transfer.

//

//

ORDER DENYING MOTION TO TRANSFER VENUE - 10

**B. Balancing the *Jones* Factors**

On balance, the factors weigh against transfer to the District of Colorado. Of the nine factors, three are neutral, one weighs marginally in favor transfer, three weigh marginally against transfer, and two weigh heavily against transfer. Accordingly, the court concludes Defendants' motion to transfer should be denied.

## IV.   CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby ORDERS that Defendants' Motion to Transfer Venue, Dkt. #25, is DENIED.

DATED this 6th day of July, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION TO TRANSFER VENUE - 11