UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL SCOTT, <br><br> Plaintiff, <br><br> v. <br><br> CALEB CARR, *et al.*, <br><br> Defendants. | CASE NO. C20-236RSM <br><br> ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Defendants Caleb Carr and Vita Inclinata Technologies, Inc. ("Vita")'s Motion to Compel, Dkt. #53, and Motion for Protective Order and Order Quashing Plaintiff's Notice of Deposition, Dkt. #55. Plaintiff Paul Scott has also filed a Motion to Compel. Dkt. #57. Although parties have requested oral argument, the Court finds it unnecessary to resolve the underlying issues. Having reviewed parties' briefing, the declarations and exhibits submitted in support thereof, and the remainder of the record, the Court ORDERS that Plaintiff's Motion to Compel is DENIED, Defendants' Motion for Protective Order is GRANTED, and Defendants' Motion to Compel is GRANTED.

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 1

## II.     BACKGROUND

A full background of this case is not necessary given the Court's previous orders in this matter. This action involves a dispute between Defendant Carr and Plaintiff regarding shares in Defendant Carr's company, Vita. Mr. Carr met Plaintiff in 2018 through connections at Seattle University and offered Plaintiff a 1% ownership interest in Vita Inclinata Technologies, LLC ("Vita LLC") in exchange for Plaintiff's consulting and assistance with early-stage business development. Parties executed an agreement on November 9, 2018 ("the Agreement") in which Mr. Carr pledged 1% equity in Vita LLC to Plaintiff in consideration for past and ongoing consulting services. Dkt. #19 at ¶¶ 3.8-3.10. After parties executed the agreement, Vita LLC was converted into Vita, a Delaware corporation. *Id.* at ¶ 3.11.

On January 16, 2020, Plaintiff brought this action under breach of contract, declaratory judgment, unjust enrichment, quantum meruit, and promissory estoppel, seeking relief for Defendants' alleged failure to transfer the 1% interest as provided by the terms of the Agreement. Dkt. #1. Both sides have moved to compel production of certain documents. *See* Dkts. #53, 57. Furthermore, on April 5, 2021, Plaintiff served Defendants with an amended notice of a Rule 30(b)(6) deposition. Dkt. #58-16. Defendants have moved for a protective order and order quashing Plaintiff's amended Rule 30(b)(6) deposition. Dkt. #55.

## III.     DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 2

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. Plaintiff's Motion to Compel

As an initial matter, Defendants move to strike the portion of Plaintiff's Motion to Compel, Dkt. #57, that exceeds the twelve-page limit set forth under LCR 7(e). The Court GRANTS Defendants' motion and will limit its consideration to the last twelve pages of Plaintiff's Motion.

Plaintiff moves to compel production of Vita's financial information responsive to Requests for Production ("RFPs") 18, 37, 44, 45, 51-54, 58 to Carr and RFPs 5, 11, 14-15, 17-22, and 26 to Vita such that its retained expert, Redwood Valuation Partners ("Redwood"), may perform a valuation of Vita for purposes of calculating Plaintiff's damages. These RFPs seek the following documents necessary for Redwood's valuation:

- Pre-financing Capitalization Table for each round
- Series A and Series B Preferred Stock Purchase Agreements
- Series A and Series B Investors' Rights Agreement
- Form of convertible note agreements
- Option ledger with exercise prices
- Option Pricing (409(a)) Reports for each round
- Total invested capital raised to date
- Term sheet for any near-term fundraising or potential acquisitions
- Any Financial Statements for 2018, 2019, 2020 and 2021
- Balance sheets and income statements

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 3

- Board of Directors meeting minutes
- Corporate Tax Returns for 2018, 2019 and 2020

Dkt. #57 at 13. Plaintiff also argues that he is entitled to a 30(b)(6) deposition to obtain "any remaining necessary corporate and valuation information" following production. *Id.*

Defendants oppose Plaintiff's motion and move for a protective order barring Plaintiff from obtaining discovery in the following general areas: (1) the current, past, or future cash value of Vita shares of stock; (2) the tax liability that Scott may incur from any transfer of the shares; and (3) documents revealing Vita's current or past financial position. Dkt. #55 at 3. Furthermore, Defendants request that the protective order quash Plaintiff's Notice of Deposition to Vita for a 30(b)(6) Representative on all 11 topics noticed, and relieve Defendants from any obligation to provide further written responses and production responsive to the following requests: Interrogatories 9-10 to Carr; RFPs 12-15, 39, 42-45, 48-59 to Carr; Interrogatories 3, 6-9 to Vita; and RFPs 12-27 to Vita.

Plaintiff argues that the requested documents are relevant to (1) calculating Plaintiff's damages pursuant to Fed. R. Civ. P. 26; and (2) Defendants' affirmative defenses. The Court will address each basis for discovery in turn.

   *i.*  *Monetary Award for Breach of Contract*

Defendants argue that the current value of Vita's stock lacks relevance to Plaintiff's breach of contract claim, given that specific performance—the transfer of Vita shares—is the only proper remedy. Defendants contend that the disputed Stock Agreement does not entitle Plaintiff to demand the cash value of Vita stock as an alternative remedy in the event of a breach and does not contain a provision for liquidated damages. *See* Dkt. #13-1. Defendants further argue that awarding Plaintiff the cash value of stock in a start-up company and no public market for stock

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 4

would amount to an unjust "exit" for Plaintiff "at a time when no other shareholder can liquidate their shares." Dkt. #55 at 10.

The Court agrees with Plaintiff that, ordinarily, the question of remedy is not properly resolved through discovery motions. Yet here, the relevance of the sensitive financial documents that Plaintiff seeks to compel hinges on what remedies are available to him. If Defendants are correct that Plaintiff's remedy is limited to specific performance, then Plaintiff may not obtain these documents for purposes of a futile damages calculation. Accordingly, the Court must determine what remedies are available to Plaintiff to resolve the discovery question.

In a breach of contract action, "the proper measure of damages is the plaintiff's 'expectation interest as measured by . . . the loss in the value to him of the other party's performance.'" *Leroy's Horse & Sports Place v. Racusin*, 21 F. App'x 716, 718 (9th Cir. 2001) (quoting Restatement (Second) of Contracts § 347). Damages are the typical remedy, given that "[t]he traditional approach of the law of contract remedies is not to compel performance by the breaching party *but to compensate the injured nonbreaching party for the loss resulting from the breach*. . . . [S]pecific performance is not appropriate when money damages are adequate." Restatement (Second) of Contracts—Remedies for breach of contract, Licensing Law Handbook § 8:14 (emphasis added); *see also E.H. Boly & Son, Inc. v. Schneider,* 525 F.2d 20, 24 (9th Cir. 1975) ("When one party repudiates a contract or commits a total breach thereof, the injured party has an election to pursue one of three remedies; he may treat the contract as at an end and sue for restitution, he may sue for damages, or he may sue for specific performance *in certain cases*.") (emphasis added).

//

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 5

However, in actions for breach of contract for sales of corporate stock, specific performance will lie "where the stock has no market value, its actual value is difficult or impossible to determine, and it cannot be purchased on the open market or easily be obtained elsewhere, or where there is uncertainty as to the real value of the stock and uncertainty in the matter of ascertaining the amount of damages." Remedies for breach of the contract—Specific performance—In general, 12A Fletcher Cyc. Corp. § 5634 (internal citations omitted). In cases involving sale or transfer of stock for closed corporations, Washington courts have found that the difficulty in ascertaining the value of the stock warrants specific performance. *See, e.g.*, *McLeod v. Keith*, 69 Wash. 2d 201, 204, 417 P.2d 861, 864 (1966) ("[T]his is a classic case for specific performance. The subject matter of the contract is stock in a close corporation, none of which is available on the market and its value cannot be readily ascertained."); *Rogers Walla Walla, Inc. v. Ballard*, 16 Wash. App. 81, 90, 553 P.2d 1372, 1378 (1976) (Ordering specific performance pursuant to *McLeod* where "[t]he stock was not listed on any securities exchange . . . was traded infrequently . . . and "the open market value of the stock was unknown."). Parties have not cited Colorado cases addressing the specific question of remedy in breach of contract suits for transfer of stock for closed corporations, and the Court is not aware of any. However, in *Frue v. Houghton*, the Colorado Supreme Court followed the same principle underlying *McLeod* and *Rogers Walla Walla* by ordering specific performance for transfer of shares or stocks that "are of uncertain value, and not always readily obtainable in the market." 6 Colo. 318, 320 (Colo. 1882).

From these cases, the Court concludes that where a corporation's stock value is uncertain or not easily ascertained, as in closed corporations, specific performance is the proper remedy under Washington and Colorado law. Here, Plaintiff does not dispute that Vita is a closed corporation. However, he maintains that the stock value can be ascertained through Defendants'

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 6

production of the requested documents to allow Redwood to conduct a valuation.  As an initial matter, the fact that a damages calculation requires a valuation from a retained expert defeats any argument that Vita's stock value is "readily ascertained."  Furthermore, Plaintiff fails to justify his position that Redwood's valuation of Vita's shares, which requires access to Vita's sensitive corporate and financial documents, is a "required analysis" that the Court must allow for purposes of exploring whether damages are appropriate. Dkt. #75 at 4.  Plaintiff cites two cases for the proposition that courts have the authority to value shares of a private corporation, yet both are readily distinguishable from the instant case.  In *Walter S. Cheesman Realty Co. v. Moore*, a minority shareholder sued a corporation pursuant to a dissenters' rights statutes, seeking a determination of the fair value of the dissenters' shares.  *See* 770 P.2d 1308 (Colo. App. 1988).  Plaintiff also relies on U.S. Supreme Court case *Virginia v. W. Virginia*, where the Commonwealth of Virginia sued the State of West Virginia to adjudicate the amount of public debt due to Virginia as a result of the creation of West Virginia.  *See* 238 U.S. 202, 213 (1915) ("[T]hat there was no sufficient proof of market value, was not an insuperable obstacle to the making of a fair valuation.  It was clearly proper to introduce evidence tending to show the intrinsic value of the shares.").  Plaintiff has failed to explain how either case entitles him to a valuation of Vita, given that he is neither a shareholder suing under a shareholder rights statute nor a state seeking a valuation to apportion public debt.

For these reasons, the Court finds that Plaintiff has failed to rebut Defendants' position that as a closed corporation, Vita's stock value is not readily ascertainable.  Nor has he provided any basis for this Court to require a valuation for the purpose of determining if monetary damages may be adequate. Accordingly, Plaintiff's motion to compel discovery of Defendants' corporate and financial documents for the purpose of calculating damages is DENIED.

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 7

> ii.     *Affirmative Defenses*

Alternatively, Plaintiff argues that the documents he seeks are relevant to Mr. Carr's affirmative defenses of mistake, impossibility or impracticability as to his ability to transfer shares of Vita to Plaintiff. Dkt. #57 at 16-17. In his Answer, Mr. Carr pleads that he and/or Mr. Carr "were mistaken about the ability to transfer shares of Vita, which an allegedly experienced businessman like Mr. Scott knew or should have known," and that "Mr. Carr could not comply with the contract because it was not possible or practicable to do so." Dkt. #7 at ¶¶ 38-39.

Plaintiff argues that the requested documents are relevant to Mr. Carr's defenses based on statements from Derek Sikora, co-founder of Vita, that "Mr. Carr was restricted from transferring his shares based on corporate agreements." Dkt. #57 at 17. For that reason, Plaintiff contends, he is entitled to discovery of all subsequent corporate agreements to resolve the question of whether mistake or impossibility "was caused by Mr. Carr himself or originated after the Stock Agreement." *Id.* Plaintiff further argues that Mr. Carr and Mr. Sikora have both used attorney-client privilege claims to "prevent inquiry into the reasons why Mr. Sikora would not agree when Mr. Carr allegedly requested his consent to transfer Mr. Carr's own shares to Mr. Scott." *Id.* He maintains that if Defendants continue to use the shield of attorney-client privilege to prevent an inquiry into why Mr. Carr refused to transfer shares to Mr. Scott, then Plaintiff is entitled to a full inquiry and review of Vita's corporate documents "to understand the reasons behind Mr. Carr's inaction." *Id.*

Defendants respond that Plaintiff has already been provided with documents that demonstrate the relevant restraints on transfer of Vita's stock. Dkt. #67 at 10. Indeed, in response to Plaintiff's interrogatories seeking identification of "any and all restrictions on the transfer of the shares of stock" that are the subject of this action, Mr. Carr identified page 1 of the Stock

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 8

Agreement, which stated that "[t]he 1000 full shares in the company shall not be transferred *unless agreed upon by all owners* of the Corporation's Stock . . . ." Dkt. #58-9 at 19 (emphasis added). Defendants also argue that there is no dispute that parties were mistaken that the Stock Agreement was an appropriate mechanism for transferring Vita stock, and that Mr. Sikora, both a co-founder and shareholder of Vita, was exercising his authority as a shareholder when he refused the transfer. Dkt. #67. at 10-11. Furthermore, Defendants argue that Plaintiff misrepresents Mr. Sikora's testimony, which reflects that Mr. Carr attempted to obtain Mr. Sikora's consent to transfer the shares—as required by the Stock Agreement—and that Mr. Sikora refused. *Id.* at 11-12. For these reasons, Defendants contend, there is no need for further discovery to verify why Mr. Sikora refused to consent to the stock transfer, given that the Stock Agreement gave shareholders the power to deny transfer of the stock for any reason. *Id.* at 12.

Although Plaintiff's motion does not cite to the specific testimony from Mr. Sikora that identifies "corporate agreements" as the basis for his belief that Mr. Carr was prohibited from transferring his shares, it appears that Plaintiff is referring to the following excerpt from Mr. Sikora's deposition:

> Q: When you say that Caleb [Carr] does not have the authority to transfer his own shares, what's the basis of that observation?
> [Objection as to form]
> A: The framework of our shareholders' agreements, corporation, and guidance provided by counsel on numerous occasions.
> Q: . . . [L]et me just talk generally about the documents that you described. Are you referring to the governing documents of Vita?
> [Objection as to form]
> A: Yes
> Q: And those would include the shareholder agreement that you just mentioned?
> A: Yes.
> Q: Would it also include the bylaws of Vita?
> A: Yes.
> Q: And any other documents that you would be relying upon in evaluation what you perceived to be Caleb's authority to transfer his own shares?
> [Objection as to form]

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 9

> A: I would have to defer that question to counsel.
> Q: Okay. And so at the time that you and Mr. Carr discussed transferring a portion of his shares to Paul [Scott], what documents did you consult?
> [Objection as to form]
> A: I did not consult documents. I consulted counsel.

Dkt. #58-7 at 8. Based on this excerpt, the Court finds that Plaintiff's characterization of Mr. Sikora's testimony is inaccurate. Mr. Sikora's response makes clear that he did not base his conclusion on his review of undisclosed corporate agreements, but rather on advice from counsel regarding their interpretation of Vita's various corporate documents. Mr. Sikora's statement does not justify a "full inquiry and review into all the corporate documents of Vita to understand the reasons behind Mr. Carr's inaction," as Plaintiff has requested. Dkt. #75 at 5. Given that Defendants have identified the Stock Agreement as the basis for Mr. Carr's lack of authority to transfer his shares to Mr. Scott, *see* Dkt. #58-9 at 19, the Court cannot conclude that any remaining non-privileged documents Plaintiff seeks to compel are relevant to Defendants' affirmative defenses or proportional to the needs of the case.

      *iii.*      Objections to 30(b)(6) Deposition of Vita

Finally, Plaintiff moves the Court to compel the 30(b)(6) deposition of Vita to obtain "any remaining necessary corporate and valuation information" following document production. Dkt. #57 at 13. The Court agrees with Defendants that the first two topics, which request (1) facts and documents which support the allegations in Vita's Answer and Affirmative Defenses; and (2) documents and information provided to Plaintiff during the course of the lawsuit as set forth in their discovery responses, are overly broad and not proportionate to the needs of the case. Dkt. #58-16 at 5. The remainder of Plaintiff's notice specifies the same topics sought in his motion to compel that relate to Redwood's valuation of Vita's stocks and Vita's affirmative defenses, including communications related to requests from Mr. Carr to transfer stock and changes and

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 10

amendments to Vita's corporate governance documents. *Id.* at 5-6. Because Plaintiff has failed to demonstrate the relevance of the requested documents, the Court likewise denies his request to compel a deposition on the corporate and financial topics. Defendants' Motion to Quash, Dkt. #55, is therefore GRANTED.

### C. Defendants' Motion for Protective Order

In addition to opposing Plaintiff's motion to compel, Defendants seek a protective order to bar Plaintiff Scott from obtaining supplemental discovery on the following general topics:

1. The current, past, or future cash value of Vita shares of stock;
2. The tax liability that Scott may incur from any transfer of the shares; and,
3. Documents revealing Vita's current or past financial position.

Defendants also seek a protective order barring the existing discovery requests that address the same topics listed above:

- Interrogatories 9 and 10 to Carr;
- Requests for Production 12, 13, 14, 15, 39, 42, 43, 44, 45, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, and 59 to Carr;
- Interrogatories 3, 6, 7, 8, and 9 to Vita; and
- Requests for Production 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27 to Vita.

Dkt. #55 at 3. Defendants seek a protective order on the basis that "there is no circumstance in which this information could be relevant to any claim or issue plead," and therefore object to these requests as irrelevant, overbroad and unduly burdensome. *Id.* at 2.

In response to a discovery request, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). On a motion for protective order, the party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic*

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 11

*Archbishop of Portland in Oregon,* 661 F.3d 417, 424 (9th Cir. 2011). The Court may consider the following factors when determining whether "good cause" exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id*. Even if "good cause" exists, the Court must balance the interests in allowing discovery against the burdens to the parties or nonparties. *Id.* at 425.

Defendants argue that Plaintiff's requests for sensitive business and financial records, sought for the purposes of Redwood performing a valuation of Vita's shares, are neither relevant nor proportionate to the needs of the case. Dkt. #55 at 10. Plaintiff's response reiterates the same argument set forth in his motion to compel: that the requested discovery is relevant to Plaintiff's quantification of monetary damages, therefore entitling Plaintiff to this information notwithstanding their sensitivity and/or confidentiality. Dkt. #63 at 10-12. Because this Court has concluded that specific performance is the proper remedy for Plaintiff's breach of contract claim, Defendants have demonstrated sufficient good cause to bar Plaintiff from obtaining supplemental discovery on the general topics of Vita's sensitive business information related to the current; past or future cash value of Vita shares of stock; tax liability that Plaintiff may incur from any transfer of shares; and documents revealing Vita's current or past financial position, as well as any existing requests that seek discovery on those three topics. Defendant's Motion for Protective Order, Dkt. #55, is therefore GRANTED.

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 12

### D. Defendants' Motion to Compel

Defendants move to compel production of Plaintiff's damages computation and supporting evidence for his claims for unjust enrichment and quantum meruit. Dkt. #53. As an alternative to Plaintiff's breach of contract claim, these quasi-contract claims seek damages in the form of "the value of the benefit received by Defendants" and "the value of the services [Plaintiff] rendered." Dkt. #19 at ¶¶ 6.5, 7.5. Specifically, Defendants seek discovery on (1) the value of Plaintiff's professional qualifications and experience; (2) Plaintiff's services rendered or benefits conferred to Mr. Carr; (3) tax-related documents to show any change in Plaintiff's taxable income and capital gains; and (4) any other documents that support or relate to Plaintiff's qualifications as a business advisor, the value of services rendered as an advisor or consultant in the marketplace, and any damages that he seeks in this case. Dkt. 53 at 6-10. Defendants concede that if the Court grants their Motion for Protective Order, then production of Plaintiff's tax-related documents may not be necessary to demonstrate tax liability related to the Vita stock at issue but may still be relevant to the alleged benefit of his services. *Id.* at 10.

*i. Supplemental Production*

In his Response, Plaintiff does not object to Defendants' requests. Rather, he claims that he has provided complete discovery responses and production. Dkt. #79 at 6. Notwithstanding Plaintiff's assurances, Defendants contend that this supplemental production is "woefully inadequate," with pages missing from his tax returns, invoices provided only for certain years, missing records for Plaintiff's advisory services between summer of 2018 through fall of 2019, and business records that come from only one of the two relevant businesses that Plaintiff claims to own and actively operate. Dkt. #81 at 6; Dkt. #82 at ¶¶ 2-28. The Court finds that the requested documents are relevant and properly subject to discovery for purposes of calculating the value of

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 13

Plaintiff's services rendered. For that reason, to the extent Plaintiff has provided incomplete records, he is obligated to produce the complete information.

      ii.      *Damages Calculation*

Defendants also seek to compel Plaintiff's damages calculations for his alternative claims for unjust enrichment and quantum meruit. Although the Court has concluded that Vita's status as a closed corporation limits Plaintiff's remedy for breach of contract to specific performance, this does not preclude Plaintiff from seeking damages for the benefit Vita retained or the value of services he provided under these quasi-contract claims—neither of which depend on the existence of a valid contract. *Dragt v. Dragt/DeTray, LLC*, 139 Wash. App. 560, 577, 161 P.3d 473, 482 (2007) ("Unjust enrichment and quantum meruit are related doctrines; the former is a broader concept that encompasses the latter."); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000) ("The doctrine of quantum meruit, also termed quasi-contract or unjust enrichment, does not depend upon the existence of a contract"). Consequently, pursuant to Rule 26, he is required to disclose a computation for both categories of damages as well as the documents upon which the computations are based. Fed. R. Civ. P. 26(a)(1)(A)(iii).

Unjust enrichment allows "recovery for the value of the benefit retained absent any contractual relationship" because justice requires it. *Young v. Young,* 164 Wash.2d 477, 484, 191 P.3d 1258 (Wash. 2008). The narrower doctrine of quantum meruit, meaning "as much as deserved," specifically recovers "the reasonable value of services provided under a contract implied in fact." *Id.* at 485. Plaintiff argues that a proper damages computation for his unjust enrichment claim, i.e. the value of the benefit received by Defendants, requires that Defendants disclose certain documents. Specifically, he contends that in order to calculate the benefit he provided to Vita through his advice and consulting, he needs access to Vita's corporate documents

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 14

to perform a valuation of Vita's shares and determine the extent to which their value increased as a result of his services.  Dkt. #79 at 8.

As an initial matter, it is well-established that "[t]he plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Jackson v. United Artists Theatre Circuit, Inc.,* 278 F.R.D. 586, 593 (D. Ariz.2011) (citing *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 294–95 (2nd Cir. 2006)).  "As the language of Rule 26(a)(1)(A)(iii) indicates, for disclosure purposes, damages are determined not by actual cost, *but by what the party claims*." *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 4848229, at *6 (W.D. Wash. Sept. 29, 2014) (emphasis added).  For that reason, a plaintiff may not "condition its compliance with its discovery obligations on receiving discovery from its opponents." *Jarvis v. Janney*, No. 11-CV-00321-TOR, 2012 WL 13093882, at *3 (E.D. Wash. Mar. 27, 2012) (citing *Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004)).  Accordingly, regardless of whether Plaintiff needs information from Defendants to supplement his initial damages claim, he was required in the first instance to disclose his initial computation or, at a minimum, how he intends to compute damages pending receipt of additional information.  *Jarvis*, 2012 WL 13093882, at *3.

Moreover, returning to the question addressed in Defendants' Motion for Protective Order as to whether Vita's sensitive financial documents are discoverable, the Court is again not persuaded by Plaintiff's argument that these documents necessary for conducting a valuation are relevant or proportional to the needs of this case.  Their relevance to calculating the benefit Plaintiff conferred on Defendants through his consulting services is marginal at best, given the multitude of factors beyond his consulting services that would impact Vita's changes in valuation. Indeed, while unjust enrichment cases involving real property may use the value of the property's

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 15

enhancement as a measure of damages, *see, e.g.*, *Young*, 164 Wash.2d at 484, "in the case of professional services, the value of the benefit conferred is often the same as the value of the services rendered." *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1017 (Utah 2015). For these reasons, Plaintiff's argument that these documents are necessary to calculating his quasi-contract damages are unpersuasive.

Accordingly, Defendants' Motion to Compel, Dkt. #53, is GRANTED.

## IV.   CONCLUSION

For the foregoing reasons, having reviewed parties' motions, the exhibits and declarations provided in support thereof, and the remainder of the record, the Court hereby ORDERS:

(1) Plaintiff's Motion to Compel, Dkt. #57, is DENIED;

(2) Defendants' Motion for Protective Order, Dkt. #55, is GRANTED;

(3) Defendants' Motion to Compel, Dkt. #53, is GRANTED.  Plaintiff is ORDERED to provide a computation of damages, supplement his interrogatory responses, and provide the requested documents responsive to Defendant Carr's First Interrogatories and Requests for Production, dated October 12, 2020, within **fourteen (14)** days from the date of this Order.

DATED this 26th day of August, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS TO COMPEL AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER - 16